Filed 7/13/23  P. v. Ramirez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>RICHARD DAVID RAMIREZ,<br><br>    Defendant and Appellant. | G061275<br><br>(Super. Ct. No. 01WF2314)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Andre Manssourian, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Lynn McGinnis and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

\*     \*     \*

Two decades ago, a jury found defendant Richard David Ramirez guilty of first degree murder. He later filed a petition for relief from his murder conviction under Penal Code section 1172.6.[1] The trial court denied his petition on grounds he had failed to state a prima facie case. On appeal, the record shows the jury found Ramirez intentionally killed the victim. So, he is ineligible for relief under section 1172.6 as a matter of law. We therefore affirm the order.

I

FACTS AND PROCEDURAL HISTORY

A. *Ramirez's Convictions*

The following facts are provided for background purposes. They have been taken from this Division's unpublished opinion, *People v. Ramirez, et al.* (Jan. 18, 2006, G033858) [nonpub. opn.], which affirmed Ramirez's convictions.

Ramirez was a drug dealer and member of the Hawaiian Gardens gang, which was "'at war'" with an Artesia gang. Seventeen-year-old Guillermo Carvajal went to Ramirez's house to pay off a relative's debt. Carvajal was from Artesia but was not in a gang. According to an eyewitness, codefendants Jaren Anthony Cervantes and Stanley Dean Cruz were at Ramirez's house and were members of gangs that were hostile to the same Artesia gang. Cervantes, Cruz, and an unidentified man accused Carvajal of being from Artesia and asked about his gang affiliation. Carvajal turned to leave but Cruz and Cervantes blocked his exit and summoned Ramirez. (*People v. Ramirez*, *supra*, G033858.)

---

[1] All further unspecified statutory references are to the Penal Code. Former section 1170.95 was renumbered section 1172.6 without substantive change, effective June 30, 2022. For clarity, we refer to the statutory provision as section 1172.6. (Stats. 2022, ch. 58, § 10.)

"Ramirez told [Carvajal], 'You have been coming over here for like six months and you are from Artesia,' then punched him. The men forced [Carvajal] to his knees. Ramirez asked Cervantes to get some rope or tape. The men then took [Carvajal] out of the eyewitness's view. After a few minutes, the eyewitness heard one of them say, 'It looks like he's dead, home[s].' One of them asked for a blanket to wrap around the body. Ramirez approached the eyewitness, gave him some drugs, and warned him, 'don't trip.' Ramirez explained that they had been 'taking care of this fool from Artesia' because 'we're at war with these fools.'" (*People v. Ramirez*, *supra*, G033858.) Ramirez and Cervantes later dumped Carvajal's body in Los Alamitos. (*Ibid.*)

Ramirez, Cervantes, and Cruz were each charged with one count of first degree murder (§ 187, subd. (a)), and street terrorism (§186.22, subd. (a)). The information also alleged special circumstances of murder committed (1) during a robbery (§ 190.2, subd. (a)(17)), and (2) while participating in a criminal street gang (§ 190.2, subd. (a)(22)). The information further alleged a gang sentence enhancement for the murder charge (§ 186.22, subd. (b)(1)).

The three defendants were tried together and convicted on all counts. The jury found true the gang murder special circumstance and the gang sentence enhancement. But it found not true the robbery murder special circumstance. The three defendants were all sentenced to life without the possibility of parole. (*People v. Ramirez*, *supra*, G033858.)

We affirmed the convictions.


B. *Petition for Resentencing*

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 [(2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 1, subd. (f))] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did

3

not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill [No.] 1437 added section 1170.95, [now section 1172.6,] which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

To seek relief under section 1172.6, a convicted murderer must file a declaration stating (1) a charging document was filed against the petitioner allowing the prosecution to proceed under a felony murder or natural and probable consequences theory of murder, (2) the petitioner was convicted of murder, and (3) the petitioner could not presently be convicted of murder due to the amendments to sections 188 and 189. (§ 1172.6, subd. (a); *People v. Strong* (2022) 13 Cal.5th 698, 708.)

The trial court reviews a 1172.6 petition "'to determine whether the petitioner has made a prima facie case for relief' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.'" (*People v. Strong*, *supra*, 13 Cal.5th at p. 708.) Generally, this leads to "an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill 1437." (*Id*. at pp. 708-709.)

Ramirez filed a section 1172.6 petition for resentencing. Among other things, his declaration asserted he could not presently be convicted of first degree murder because he (1) was not the actual killer, (2) did not aid or abet the actual killer and had no intent to kill, and (3) was not a major participant in the underlying felony who acted with reckless indifference to human life. The district attorney's office opposed the petition. It argued the gang murder special circumstance required the jury to find that Ramirez had

4

intended to kill Carvajal. Thus, Ramirez could still be convicted of first degree murder today.

The trial court summarily denied Ramirez's petition outside the presence of the parties. The court's explanation for the denial only stated, "[t]he petition does not set forth a prima facie case for relief under the statute."

Ramirez appeals the denial of his petition. He maintains the court should have issued an order to show cause and held an evidentiary hearing.

II

DISCUSSION

The primary issue on appeal is whether the jury's findings on the gang murder special circumstance makes Ramirez ineligible for relief under section 1172.6.

As set forth above, following Senate Bill No. 1437, an accomplice can no longer be convicted of murder under a felony murder or natural and probable consequences theory. (*People v. Pacheco* (2022) 76 Cal.App.5th 118, 123-124 (*Pacheco*).) However, "an accomplice can still be convicted of murder as a direct aider and abettor." (*Id*. at p. 124.) "Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer 'engaged in the requisite acts and had the requisite intent' to aid and abet the target crime of murder. [Citation.] A direct aider and abettor's 'guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.'" (*Ibid*.)

Also, there is no need for a jury to distinguish between the actual killer and a direct aider and abettor. "'"The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who [was] the direct perpetrator or to what extent each played which role."' [Citation.] '[A]s long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder as that offense is

5

defined by statute, it need not decide unanimously by which theory he is guilty. [Citations.] More specifically, the jury need not decide unanimously whether defendant was guilty as the aider and abettor or as the direct perpetrator.'" (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252.)

Here, the jury was instructed on three different theories of murder: direct aiding and abetting, a natural and probable consequences theory of aiding and abetting, and felony murder based on commission of the robbery. The verdict form does not specify which theory the jury relied on when finding Ramirez guilty of first degree murder. But the record shows the jury found Ramirez directly aided and abetted the murder. Specifically, the jury found true the gang murder special circumstance. To make this finding, it had to conclude Ramirez intentionally killed Carvajal. The relevant jury instruction stated, "[t]o find that the special circumstance, 'intentional killing by an active street gang member' is true, it must be proved:

"1. *The defendant intentionally killed the victim*;

"2. At the time of the killing, the defendant was an active participant in a criminal street gang;

"3. The members of that gang engaged in or have engaged in a pattern of criminal gang activity;

"4. The defendant knew that the gang members engaged in or have engaged in a pattern of criminal gang activity; and

"5. The murder was carried out to further the activities of the criminal street gang." (Italics added.)

Ramirez suggests the jury may have believed that one but not all of the codefendants intentionally killed Carvajal. Thus, the jury may not have found he intentionally killed Carvajal. This argument is unpersuasive for two reasons.

6

First, the jury considered the gang murder special circumstance separately for each defendant. It was instructed, "[y]ou must decide separately as to each of the defendants the existence or nonexistence of each special circumstance alleged in this case."

Second, the jury specifically found the gang murder special circumstance true for Ramirez. It issued a finding stating, "[w]e the jury FIND IT TO BE TRUE that the SPECIAL CIRCUMSTANCE pursuants [*sic*] to Penal Code Section 190.2(a)(22) exists, to-wit: RICHARD DAVID RAMIREZ committed the murder while the defendant was an active participant of a criminal street gang, with knowledge that its members engage in and have engaged in a pattern of criminal gang activity and did willfully promote further and assist in felony criminal conduct by gang members."

Because the jury found the gang murder special circumstance true for Ramirez, it must have found that he intentionally killed Carvajal. In other words, the jury found Ramirez directly aided and abetted in Carvajal's murder. Thus, Ramirez's murder conviction would still be valid under the amended versions of sections 188 and 189. (*Pacheco*, *supra*, 76 Cal.App.5th at pp. 123-124.)

While neither party has cited this Division's opinion in *Pacheco*, we note that it is not inconsistent with our decision today. *Pacheco* found a jury's true finding on a gang murder special circumstance did not bar the petitioner from section 1172.6 relief as a matter of law. (*Pacheco*, *supra*, 76 Cal.App.5th at pp. 121-122.) However, the *Pacheco* jury instructions were markedly different from the instructions at issue here. In *Pacheco*, the jury was instructed that to find the gang murder special circumstance true, the prosecution had to "prove that: 1. *A perpetrator* intentionally killed [the victim]; [¶] 2. At the time of the killing, *the defendant* was an active participant in a criminal street gang; [¶] 3. *The defendant* knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; [¶] 4. The murder was carried out to further the

7

activities of the criminal street gang; [¶] AND [¶] 5. *The defendant had the intent to kill at the time of the killing.*" (*Id*. at pp. 127-128.)

Crucially, the first element of the jury instructions in *Pacheco* did not require the jury to find the petitioner killed the victim. It only required a finding that "[a] perpetrator" did. (Italics omitted.) Thus, *Pacheco* concluded the jury could have found the petitioner "intended to kill [(*i.e.*, had the requisite mens rea)], but he did nothing to directly 'aid, facilitate, promote, encourage, or instigate' the target crime of murder [(*i.e.*, the actus reus)]." (*Pacheco*, *supra*, 76 Cal.App.5th. at p. 128.)

Here, the jury found Ramirez "intentionally killed the victim." This finding establishes that Ramirez intended to kill Carvajal (the mens rea) and committed an act that directly aided the murder (the actus reus).

Finally, Ramirez contends the court erred by failing to provide a statement explaining its denial of his petition. (§ 1172.6, subd. (c).) But even if the court failed to provide such a statement, the error was harmless. (See *People v. Epps* (2001) 25 Cal.4th 19, 29 [harmless error test applies to errors of state law].) Under the harmless error test, a ruling is reversed if it is reasonably probable the defendant would have obtained a more favorable result in the absence of the error. (*Ibid*.) As explained above, the record shows Ramirez is ineligible for relief under section 1172.6. A statement explaining the court's reasoning for the denial would not have allowed Ramirez to obtain a more favorable result.

## III

## DISPOSITION

The order is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

SANCHEZ, J.

DELANEY, J.